Dallas HYSTAD and Phylis A. Hystad, Plaintiffs and Appellees,

v.

MID–CON EXPLORATION CO.—EXETER, Apache Corporation and G.W.R. Operating Company, Defendants and Appellants.

Civ. No. 910266.

Supreme Court of North Dakota.

July 28, 1992.

Winkjer, McKennett, Stenehjem, Trotter & Reierson, Williston, for plaintiffs and appellees; argued by Kent A. Reierson.

Fleck, Mather & Strutz, Bismarck, for defendants and appellants; argued by John W. Morrison.

LEVINE, Justice.

Mid–Con Exploration Co.–Exeter, Apache Corporation, and G.W.R. Operating Company (collectively referred to as the Operators)[1] appeal from a district court judgment awarding Dallas Hystad and Phylis A. Hystad damages in the amount of unpaid royalties from production of two oil and gas wells. The Operators also appeal from the denial of their post-trial alternative motions to amend findings, for judgment notwithstanding the verdict, and for a new trial. We reverse and remand for entry of a judgment of dismissal.

In late 1981 and early 1982, Exeter Exploration Company (Exeter) drilled three wells[2] in the Poe–Red River Field, which encompasses seven sections of land in McKenzie County. On April 13, 1982, the Industrial Commission issued Order No. 2708 establishing temporary spacing units of 640 acres for the Poe–Red River Pool, pursuant to § 43–02–03–18(3), N.D.A.C.

At a proper spacing hearing in November 1983, continued from October 26, 1983, Exeter sought a twelve-month extension before determination of the spacing. Hystads sought 320–acre spacing units. The Commission continued the temporary spacing until July 19, 1984, when it ordered proper spacing units of 320 acres for the sections without existing wells and 640 acres with a second allowable well for the three sections with existing wells in accordance with Exeter's request. Following a rehearing, the Commission issued an order affirming its July 19 order.

Hystads appealed to the district court,[3] which reversed the 640–acre spacing and entered a judgment establishing 320–acre spacing units for the entire pool. Exeter and the Commission appealed. We concluded that the Commission could order different size spacing units for a pool when necessary to prevent waste, avoid the drilling of unnecessary wells, or protect correlative rights. *Hystad v. Industrial Commission*, 389 N.W.2d 590 (N.D.1986). We also concluded that the Commission had not satisfactorily explained why different size spacing units were necessary and remanded for further proceedings. *Id.* After a hearing on remand, the Commission issued an order, establishing proper spacing units of 320 acres for the entire pool as of January 1, 1987.

Hystads sued, alleging in their amended complaint:[4]

## "XI.

"Exeter had information available to it at the time of the initial proper spacing hearing, October 26, 1983, which indicated to a reasonable, prudent operator that Defendants could not economically drill an additional well on those sections where the first well had been drilled.

## "XII.

"At the time of the spacing hearing, Exeter had no intention to drill an additional well in any of the sections where 640–acre spacing was provided.

## "XIII.

"A reasonable, prudent operator would have sought 320–acre spacing over the entire field.

\* \* \* \* \* \*

## "XVI.

"The Defendants violated their duty to the Plaintiff to seek favorable spacing from the Industrial Commission. By their failure, the Defendants caused the Plaintiffs to lose royalty from the period

---

1. The Operators are successors in interest to Exeter Exploration Company and another working interest owner in the Poe–Red River Field.

2. The Hystad 11–31 well was completed in November 1981. The Hystad 15–2 well was completed in February 1982. The State 16–36 well was completed in March 1982.

3. The Commission's October 17, 1984, order was not stayed or suspended during the appeal.

4. On September 13, 1990, eleven days before trial, Hystads unsuccessfully filed a motion to again amend their complaint by adding allegations of fraud and abuse of pooling powers authorized in Hystads' leases. The denial of that motion has not been challenged.

of the first proper spacing hearing, October 26, 1983, to the present."

Hystads sought as damages the royalty due them from October 26, 1983, if the Hystad 15–2 and 11–31 wells had been properly spaced as 320–acre units.

The parties agreed to have the jury decide liability and to have the court decide damages if the jury found liability. The jury returned a special verdict finding (1) that the defendants did not act as "reasonable, prudent operators in developing, operating and producing the property, with due regard for the interests of both the Hystads and themselves", (2) that the defendants' failure to act as a reasonable, prudent operator damaged the Hystads, and (3) that the defendants' failure first caused loss to Hystads in July, 1984. The trial court found damages of $486.74 for the Hystad 11–31 well, $83,935.85 for the Hystad 15–2 well, and added interest, costs and disbursements. Judgment was entered accordingly.

The dispositive issue is whether, as the Operators contend, the district court erred in failing to dismiss the complaint pursuant to their motions for summary judgment, directed verdict, and judgment notwithstanding the verdict on the ground that the complaint constituted an impermissible collateral attack on the Commission's proper spacing order.

Hystads contend that the collateral attack issue is not properly before this court, arguing (1) that an order denying summary judgment is not appealable or reviewable; (2) that, while an order denying a motion for directed verdict is reviewable, the Operators did not raise the collateral attack issue as a basis for their motion for a directed verdict; (3) that, while an order denying a motion for judgment notwithstanding the verdict is reviewable, a party may not base a motion for j.n.o.v. on grounds not included in a motion for directed verdict; and (4) that the collateral attack issue was, therefore, "never raised in a motion which is reviewable by this Court."

In 1987, the Operators unsuccessfully moved for dismissal under Rule 12(b)(v), N.D.R.Civ.P., for failure to state a claim upon which relief can be granted because the claim constituted a collateral attack upon Commission orders. In 1990, the Operators unsuccessfully filed a motion for summary judgment of dismissal. In their supporting brief, the Operators contended that Hystads' claim constituted an impermissible collateral attack on Commission orders. After Hystads rested their case, counsel for the Operators moved for a directed verdict, stating in part:

> "Your Honor, I think that sending this case to the jury today is basically telling mineral owners and oil companies that any time a mineral owner is dissatisfied with an Industrial Commission ruling in a spacing matter which is properly before the Industrial Commission, that any time they have a difference of opinion with an oil company, when they lose that round they can come back to a jury....
>
> \* \* \* \* \* \*
>
> "I think the real key came up in Mr. Reierson's argument where he said there was no evidence to support the 640 acre spacing. I don't agree with that, but if, in fact, that is their case, that is the classic case for appeal of the order. That is why the statutes allow Industrial Commission orders to be appealed. If there is insufficient evidence presented, your remedy is you appeal the order, you go to court to let the court determine it, then in 1982, not now in 1990 when all the wells are plugged."

The district court denied the motion. After both sides had rested, the Operators alternatively renewed the motions for directed verdict or summary judgment, "as there are no facts in dispute and it's a matter of law." The motions were denied. After trial, the Operators filed alternative motions for j.n.o.v., amendment of the findings and judgment, or for new trial. One of the grounds specifically asserted in the brief in support of the motion for j.n.o.v. was collateral attack: "Plaintiffs' action constitutes nothing but an impermissible collateral attack on the Commission orders." The motions were denied.

■ The Operators' motion for j.n.o.v. and supporting brief clearly raised the is-

---

sue of collateral attack. We believe the motion for directed verdict at the close of Hystads' case adequately raised the issue of collateral attack to preserve it for review in the appeal from the denial of the Operators' motion for j.n.o.v. This is especially so in light of the Operators' prior motions for summary judgment of dismissal and for dismissal under Rule 12(b)(v), N.D.R.Civ.P., both of which were specifically made on the ground that Hystads' claim was an impermissible collateral attack on Commission orders. We conclude that the collateral attack issue has been preserved for review.

We have said that the doctrines of res judicata and collateral estoppel "may be applied to prevent collateral attacks on decisions of administrative agencies" as well as judicial decisions. *United Hospital v. D'Annunzio,* 466 N.W.2d 595, 598 (N.D. 1991). We do not favor bifurcated procedures, "one in the administrative process and one in the judicial process covering the same legal questions." *Shark Brothers, Inc. v. Cass County,* 256 N.W.2d 701, 705 (N.D.1977). Administrative res judicata is more cautiously applied than judicial res judicata:

> "However, use of the doctrine of administrative res judicata is more circumspect. Administrative res judicata depends upon the subject matter decided by the administrative agency, the purpose of the administrative action, and the reasons for the later proceeding."

*United Hospital v. D'Annunzio, supra,* 466 N.W.2d at 599. The preclusive effect of an administrative decision often depends upon the adequacy of a legal remedy to contest the administrative decision. *Id.*

The "subject matter decided by the administrative agency", the proper spacing of oil and gas wells, is one that the Legislature has exclusively entrusted to the Commission. The "purpose of the administrative action" was to space wells in the Poe–Red River Field in such a way as to prevent waste, avoid the drilling of unnecessary wells, and protect correlative rights (§ 38–08–07, N.D.C.C.) as part of this state's general policy "to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas ... to the end that the landowners, the royalty owners, the producers, and the general public realize and enjoy the greatest possible good from these vital natural resources" (§ 38–08–01, N.D.C.C.). In this regard, the Commission "is charged with affirmatively carrying out state policies having goals beyond the immediate interests of the particular parties in the proceeding before [it and] ... has the state's regulatory interests to further." *Trahan v. Superior Oil Co.,* 700 F.2d 1004, 1022 n. 23 (5th Cir.1983).

The "reason[ ] for the later proceeding", Hystads' suit in district court, was to recover as damages the royalty that Hystads would have received if the Commission had, at the proper spacing hearing, (1) adopted a different view of the evidence than it did, (2) entertained a different view of the best way to protect correlative rights than it did, and (3) ordered 320–acre spacing units for the entire field, as requested by Hystads, rather than 320–acre spacing units for sections without wells and 640–acre spacing units with a second allowable well for the sections with wells, as suggested by Exeter. The legal remedy of an appeal to the courts, pursuant to § 38–08–14, N.D.C.C., which ultimately resulted in a proper spacing order in accordance with Hystads' request, would have been entirely adequate to protect Hystads' interests if they had secured a suspension or stay under § 38–08–14, N.D.C.C., of the Commission's proper spacing order while the appeal was pending. *See Loran v. Iszler,* 373 N.W.2d 870 (N.D.1985) (An appeal is the appropriate method of preserving the integrity of administrative hearings.).

The foregoing considerations indicate the appropriateness of giving preclusive effect to the Commission's order and not allowing a collateral attack, such as this suit, to recover the royalties that Hystads would have received if the Commission had entered a different proper spacing order in the first place. This suit necessarily requires a determination that the Commission's initial proper spacing order was

wrong and that its final proper spacing order after remand in *Hystad v. Industrial Commission, supra,* was correct. The appropriateness of not allowing a collateral attack on the Commission's order is underscored by consideration of our decision in *Amerada Hess Corp. v. Furlong Oil & Minerals Co.,* 348 N.W.2d 913 (N.D.1984).

In that case, Amerada drilled the K–119 well in 1956. In 1969, the well was shut in. Amerada relinquished its lease in 1974. Furlong sought Industrial Commission authority to enter the K–119 well bore. After a hearing in which Amerada participated, the Commission ordered that Furlong be allowed to enter the well. Amerada did not appeal. Amerada brought an action seeking to enjoin Furlong from entering the K–119 well bore. We said that the trial court would have been justified in "dismissing Amerada's suit for an injunction as an improper collateral attack" on the Commission's order. *Amerada, supra,* 348 N.W.2d at 916. In support of that conclusion, we noted:

"Amerada participated in the hearing that led to Order No. 2970. The findings made by the Industrial Commission reflect its particular expertise. Amerada had a full and fair opportunity to argue its version of the facts and applicable law. Amerada had the opportunity to seek judicial review by appeal to the district court and from there to this Court if it desired. Amerada chose not to appeal. No fraud or bad faith were alleged."

Similar factors exist here. Hystads participated in the proper spacing hearings. The Commission's findings reflect its expertise. Hystads were represented by counsel and expert witnesses. Hystads had a full and fair opportunity to argue their version of the facts and applicable law. Hystads sought judicial review by appeal to the district court, but did not have the Commission's order suspended or stayed. Without suspension or stay, a Commission order "continue[s] in force and effect as if no appeal was pending." § 38–08–14(3),

N.D.C.C. Fraud or bad faith have not been alleged.

We conclude that the district court should have granted the Operators' initial motion for directed verdict or their motion for judgment notwithstanding the verdict and dismissed the Hystads' action as an impermissible collateral attack on the Commission's spacing order,[5] in accordance with *Amerada* and *Shark Brothers, supra,* and cases cited therein.

The question of the proper spacing of the Poe–Red River Field has been the subject of two Commission hearings, a rehearing, an appeal to the district court, a further appeal to this court, a Commission hearing after remand, a jury trial, and this appeal. As in *Amerada, supra,* 348 N.W.2d at 917:

"The situation presented is precisely the type in which the doctrine of res judicata is most necessary to prevent collateral attacks on administrative agency decisions in order to protect successful parties from unnecessary, duplicitous proceedings and to prevent the drain on the resources of the parties and the judiciary which is evident here."

We are not alone in concluding that a regulatory order such as the one involved here may not be collaterally attacked. Courts in other jurisdictions with comprehensive regulatory schemes "to regulate the production of oil and gas and the oil and gas industry" (*Amerada, supra,* 348 N.W.2d at 916) have also held that orders of oil and gas conservation agencies may not be collaterally attacked. *See, e.g., Trahan v. Superior Oil Co.,* 700 F.2d 1004 (5th Cir.1983).

In *Trahan,* the appellate court upheld the trial court's determination that the plaintiffs' suit for cancellation of a mineral lease based on the defendant lessee's alleged failure to prevent drainage of plaintiffs' land by a well drilled by the defendant on a nearby tract was an impermissible collateral attack on orders made by the Louisiana Conservation Commissioner. There were no allegations of fraud, bad

---

5. We express no view on the propriety of the district court's denials of the Operators' earlier motions.

faith, or intentional deception. The sole basis of Trahans' complaint was that Superior failed to fairly present to the Commissioner geological and engineering information in its possession, which, if fairly presented, allegedly would have led the Commissioner to enter different orders than he did and Trahans would not have suffered uncompensated drainage. The court held that the collateral attack rule "extends to suits between private parties in which a particular order of the Commissioner is an operative fact upon which the determination of the parties' respective rights directly depends." 700 F.2d at 1015. The *Trahan* court succinctly stated the collateral attack rule:

> "The collateral attack rule simply says that it generally may not be established that [a] particular order would have made provisions in respect to the subject matter it dealt with different from those it in fact made, had the lessee presented different evidence or requested a different result at the hearing."

*Trahan, supra,* 700 F.2d at 1020. This is precisely what Hystads' suit attempts to do and it is, therefore, an impermissible collateral attack of the Commission's order. *See also Mize v. Exxon Corp.,* 640 F.2d 637 (5th Cir.1981) (A lessor may not collaterally attack an Alabama Oil and Gas Board order placing land within or without a "Production Limit" in a "Unit Area" by bringing suit for damages and partial lease cancellation alleging uncompensated drainage.); 1 *Summers Oil & Gas,* § 86, p. 429 (2nd ed. 1954) (A well spacing order "is immune from collateral attack, unless it appears to be void on its face."); 5 *Kuntz Oil & Gas* § 70.4(d), p. 375 (1991) ("Actions for damages or to cancel a lease which amount to collateral attacks on administrative orders cannot be maintained.").

Because of our conclusion that the district court should have dismissed Hystads' action as an impermissible collateral attack on the Commission's spacing order, we need not address any of the other issues raised. "Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services, Inc. v. Brooks,* 229 N.W.2d 69, 71 (N.D.1975).

The judgment is reversed and the matter is remanded for entry of a judgment of dismissal.

ERICKSTAD, C.J., and VANDE WALLE, JOHNSON and MESCHKE, JJ., concur.