STATE of Wisconsin,
Plaintiff-Respondent,

v.

Vernon D. HERSHBERGER,
Defendant-Appellant.†

Court of Appeals

*No. 2013AP1502–CR. Submitted on briefs April 14, 2014.
—Decided July 17, 2014.*

2014 WI App 86

(Also reported in 853 N.W.2d 586.)

† Petition for Review denied November 13, 2014.

222

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Elizabeth Gamsky Rich* of *Elizabeth Gamsky Rich & Associates, S.C.*, Plymouth, *Glenn C. Reynolds* of *Reynolds & Associates*, Madison, and *Amy Salberg* of *Salberg Law LLC*, West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Balistreri*, assistant attorney general, and *J.B.Van Hollen*, attorney general.

Before Blanchard, P.J., Sherman and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J. Vernon Hershberger appeals a judgment of conviction entered after a jury found him guilty of violating a holding order issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection (DATCP). Hershberger argues that the circuit court erroneously prohibited him from: (1) introducing expert testimony and other evidence purportedly showing that there was no factual basis for issuing the holding order to him; (2) introducing into evidence an unredacted version of the holding order; and (3) presenting evidence to support his theory of defense. We conclude that the circuit court properly prohibited Hershberger from introducing testimony and evidence purportedly showing that there was no factual basis for issuance of the holding order, because the evidence that Hershberger sought to introduce constituted a collateral attack on the holding order, and such a collateral attack was foreclosed by Hershberger's ability to appeal the order after it was issued. We also conclude that the circuit court properly prohibited Hershberger from introducing into evidence an unredacted version of the holding order, because the redacted portions of the order were not relevant to any issue in this criminal case. Finally, we conclude that the circuit court's evidentiary rulings did not deny Hershberger his asserted constitutional right to present a defense. Accordingly, we affirm.

## BACKGROUND

¶ 2. Hershberger operates a dairy farm. A DATCP investigator issued Hershberger a holding order pursuant to Wis. Stat. § 97.12(2)(a) (2011–12),[1] prohibiting him from selling or moving the dairy and meat products listed in the order "without written permission during

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

the duration of [the] holding order."[2] The parties do not dispute that Hershberger violated the holding order the day after it was issued. The State charged Hershberger with violating the holding order pursuant to Wis. Stat. § 97.12(2)(d)1., which is a criminal offense.[3]

¶ 3. At issue are two related evidentiary rulings that the circuit court made before trial: (1) the court prohibited any collateral attack on the holding order, and consistent with that ruling prohibited Hershberger from introducing testimony and evidence regarding the basis for the holding order, on the grounds that such evidence was not relevant; and (2) the court allowed the introduction of a version of the holding order in which references to the basis for the holding order were redacted, rather than an unredacted version. The jury found Hershberger guilty of violating the holding order.

---

[2] Wisconsin Stat. § 97.12(2)(a) provides:

Whenever any duly authorized inspector of the department has reasonable cause to believe that any food examined by him or her is adulterated or misbranded and is dangerous to health or misleading to the injury or damage of the purchaser or consumer, the inspector shall issue and deliver to the owner or custodian of the food a holding order prohibiting the sale or movement of the food for any purpose until the analysis or examination of the sample obtained has been completed. A holding order may be effective for a period of not longer than 14 days from the time of its delivery, but it may be reissued for one additional 14–day period if necessary to complete the analysis or examination of the food.

[3] Wis. Stat. § 97.12(2)(d) provides:

1. Any person violating an order issued under this section may be fined not more than the maximum amount under subd. 2. or imprisoned not more than one year in the county jail or both.

2. The maximum fine under this paragraph equals $10,000 plus the retail value of the product moved, sold or disposed of in violation of the order issued under this section.

After trial, the circuit court denied Hershberger's motion for a new trial, "stand[ing] by [its] earlier rulings" as to the collateral attack and evidentiary issues.

¶ 4. On appeal, Hershberger argues that he should have been allowed to present evidence purportedly showing that the holding order "was factually baseless," and he challenges the circuit court's evidentiary rulings prohibiting him from doing so.

## DISCUSSION

¶ 5. Hershberger argues that: (1) the circuit court erroneously applied the rule prohibiting collateral attacks to preclude him from introducing testimony and evidence relating to the factual basis of the holding order; (2) the circuit court erroneously prohibited him from introducing the unredacted holding order; and (3) these and other related evidentiary rulings combined to deny him his constitutional right to present a defense to the charge against him. We address each argument in turn.

### 1. Collateral Attack on Holding Order

¶ 6. The parties agree that Hershberger sought to offer a defense in this criminal proceeding that may be characterized as a collateral attack on the holding order. In this section, we first articulate the rule generally prohibiting collateral attacks on prior orders or judgments, then relate how the rule was addressed in the circuit court and set forth the standard of review of the circuit court's application of the rule, and finally address Hershberger's arguments that the circuit court erred in applying the rule against him.

## A. *The Collateral Attack Rule*

¶ 7. We begin with a summary of the collateral attack rule based on legal authority that explicitly refers to the application of the rule to prior *judicial* orders and judgments. We then turn to the question of the rule's application to prior *administrative* orders. As discussed in more detail below, the distinction between prior judicial orders and prior administrative orders forms the basis for one of Hershberger's arguments on appeal.

¶ 8. A collateral attack is "[a]n attack on a judgment in a proceeding other than a direct appeal." BLACK'S LAW DICTIONARY 318 (10th ed. 2014); *see also State v. Campbell*, 2006 WI 99, ¶ 54, 294 Wis. 2d 100, 718 N.W.2d 649 (a collateral attack is an " 'attempt to avoid, evade or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding' ") (quoted sources omitted). Collateral attacks are generally disfavored because " 'they disrupt the finality of prior judgments and thereby tend to undermine confidence in the integrity of our procedures and inevitably delay and impair the orderly administration of justice.' " *Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.*, 2007 WI 30, ¶ 28, 299 Wis. 2d 637, 728 N.W.2d 652 (quoted sources omitted); *see also,* 47 AM. JUR. 2D *Judgments* § 739 (2014) ("Collateral attacks on final judgments are generally disallowed or disfavored because it is the policy of the law to give finality to the judgments of the courts, and to avoid endless litigation, recognizing the public interest in the final adjudication of controversies.").

¶ 9. Accordingly, collateral attacks on prior judicial orders or judgments are generally prohibited, unless the prior orders or judgments were " 'procured by

fraud.' " *Nicole W.*, 299 Wis. 2d 637, ¶ 28 (quoted source omitted); *see also Stimson v. Munsen*, 251 Wis. 41, 44, 27 N.W.2d 896 (1947) (on collateral attack, a prior order or judgment " 'may only be set aside upon the ground that its entry was induced by or constituted fraud upon the court or . . . was the result of mistake or accident' ") (quoted source omitted); *but see Campbell*, 294 Wis. 2d 100, ¶¶ 53, 55, 62 (acknowledging an exception to the rule prohibiting collateral attacks where the order or judgment was obtained by fraud, but rejecting that exception in prosecutions for interference with child custody).

¶ 10. Collateral attacks may also be allowed where the prior judicial orders or judgments are void. *Kohler Co. v. ILHR*, 81 Wis. 2d 11, 25, 259 N.W.2d 695 (1977) ("void judgments may be attacked collaterally"). In particular, "[w]here a valid order or judgment is a necessary condition for one of the elements of a crime, a collateral attack upon the order or judgment can negate an element of the crime if the order or judgment is void." *Campbell*, 294 Wis. 2d 100, ¶ 42. A judicial order or judgment is void "[w]hen a court or other judicial body acts in excess of its jurisdiction." *Kohler*, 81 Wis. 2d at 25; *see also Campbell*, 294 Wis. 2d 100, ¶ 43 (an order or judgment is void where the court lacks subject matter or personal jurisdiction). However, an " 'order or judgment, however erroneous . . . is not subject to collateral attack merely because it is erroneous, nor is it void for that reason.' " *Stimson*, 251 Wis. at 44 (quoted source omitted).

¶ 11. While a void judicial order or judgment "is not binding on anyone," an allegedly erroneous order or judgment "has the same force and effect as a valid

judgment." *Campbell*, 294 Wis. 2d 100, ¶ 42. Consequently, " '[w]here a court has jurisdiction over the subject matter and the parties, the fact that an order or judgment is erroneously or improvidently rendered does not justify a person in failing to abide by its terms.' " *Id.*, ¶ 49 (quoted source omitted). Rather, a person must abide by the terms of an allegedly erroneous order or judgment "until he [or she] succeed[s] in reversing it through the applicable review process." *Id.*

¶ 12. This reference to resort to "the applicable review process" implicates another exception to the prohibition against a collateral attack on a purportedly erroneous order or judgment, arising out of the Due Process Clause. Under this exception, the rule prohibiting a collateral attack on a prior order or judgment may not apply where there was no meaningful opportunity for review of the order or judgment. *See Campbell*, 294 Wis. 2d 100, ¶¶ 57–58 (disallowing a collateral attack on a custody order allegedly procured by fraud where "[a]dequate judicial processes exist to attack [the] order or judgment for fraud"); *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (stating, with respect to a criminal prosecution for re-entry to the United States following a deportation order, that "judicial review must be made available before [an] administrative order may be used to establish conclusively an element of a criminal offense").

¶ 13. To summarize, collateral attacks on prior judicial orders or judgments are generally prohibited, but this rule may not apply where the order or judgment was procured by fraud, the order or judgment was void because the court acted without jurisdiction, or there was no meaningful opportunity for review of the order or judgment.

230

¶ 14. We now turn to the application of the collateral attack rule to prior administrative orders, such as the one at issue in this case, as opposed to prior judicial orders or judgments. The parties do not cite to any Wisconsin authority on point, and our research has not revealed any. However, we now describe persuasive authority regarding administrative orders, which all appears to point in the same direction.

¶ 15. As with judicial orders and judgments, an administrative order "is immune from collateral attack, unless the order is void because it was issued without, or in excess of, statutory power." 2 AM. JUR. 2D *Administrative Law* § 373 (2014); *see also* 73A C.J.S. *Public Administrative Law and Procedure* § 289 (2004) ("The order or determination of an administrative body, acting within its jurisdiction and under authority of law, is not subject to collateral attack . . . in the absence of fraud or bad faith . . . . [An administrative] decision may be subject to . . . such attack where it is void," and a decision is void "where it is made either without statutory power or in excess thereof.").

¶ 16. Consistent with these general statements that the collateral attack rule applies to prior administrative orders, the United States Supreme Court case that established the due process exception to the rule prohibiting collateral attacks on prior orders or judgments (noted above) involved an administrative order. *Mendoza-Lopez*, 481 U.S. at 837 (referring to an administrative proceeding involving a prior deportation order by an immigration judge). Further, courts in other jurisdictions have also applied the collateral attack rule to administrative orders, in subsequent enforcement actions as well as in other contexts.[4]

---

[4] Our non-exhaustive research revealed decisions applying the collateral attack rule to prior administrative orders in a

## B. *The Circuit Court's Collateral Attack Ruling*

¶ 17. In this case, where Hershberger was convicted of violating the DATCP holding order issued

variety of circumstances, including specifically in civil and criminal actions enforcing those orders, as follows.

*In enforcement contexts, see, e.g., People v. Martin,* No. 05–09–0012, 2006 WL 3076554, *6 (N.Y. Just. Ct. Oct. 23, 2006) (collecting published and unpublished New York cases and stating, "It has long been held that the propriety or correctness of the underlying administrative order generally may not be collaterally contested in a criminal prosecution for its disobedience."); *Cahill v. Harter,* 716 N.Y.S.2d 447, 448–49 (App. Div. 2000) (barring collateral attack on administrative order in civil enforcement proceeding); *Burke v. Papic,* No. CV064020422S, 2013 WL 5780779, *2 (Conn. Super. Ct. Oct. 3, 2013) (prohibiting a collateral attack on an administrative order in an enforcement action seeking fines for violation of the order); *Edmiston v. Harris County,* No. 14–11–00608–CV, 2012 WL 3612436, *4 (Tex. App. Aug. 23, 2012) (excluding evidence of non-liability as prohibited collateral attack on administrative order in collection action on the order, based on published cases applying collateral attack rule, "which encourages finality to judgments issued by the courts," to administrative orders, unless the orders are void because lacking jurisdiction); *Mitchell v. Gales,* 61 A.3d 678, 684–85 (D.C. 2013) (following *Strand v. Frenkel,* 500 A.2d 1368 (D.C. 1985) to prohibit a collateral attack on the validity of an administrative order in a subsequent judicial enforcement proceeding); *Commonwealth v. Wheeling-Pittsburgh Steel Corp.,* 348 A.2d 765, 767–68 (Pa. Commw. Ct. 1975) (ruling that defendant that failed to appeal from agency order could not attack the order in subsequent proceedings brought to enforce the order, and stating, "Cases involving other administrative agencies of this Commonwealth have long espoused this policy."); *Commonwealth ex rel. Breakiron v. Farmer,* 528 S.E.2d 183, 186–87 (Va. Ct. App. 2000) (holding that for administrative orders as well as for judicial orders, collateral attacks in defense of an enforcement action should be dismissed unless based on fraud) (followed in *Simmons v. Tynes,* 56 Va. Cir. 82 (Va. Cir. Ct. 2001)); *State v. Cook,* 148 N.W.2d 368, 369–70 (Minn. 1967) (ruling that a challenge to an administrative order suspending a driver's license

pursuant to Wis. Stat. § 97.12(2)(d)1., the existence of the holding order was "a necessary condition for one of the elements of [the] crime." *See Campbell*, 294 Wis. 2d 100, ¶ 42. Before trial, the State moved the circuit court for an order "prohibiting any collateral attack in the criminal case on the holding order that [Hershberger] is accused of violating." Putting aside a First Amendment argument that he does not pursue on appeal, Hershberger argued that the court should deny the State's request because "there is no right to administrative review or appeal" of the holding order.

in an appeal from a later criminal conviction for driving after suspension constitutes an impermissible collateral attack on a judgment) (followed in *State v. Seeber*, No. A04–560, 2005 WL 406210 (Minn. Ct. App. Feb. 22, 2005)); *State v. Sims*, 66 P.3d 472, 473, 475 (Or. 2003) (prohibiting collateral attack on administrative order revoking driver's license in criminal prosecution for driving while revoked, where the statute required only that (1) the defendant's license had been revoked, and (2) the defendant drove a motor vehicle while the revocation order was in effect); *State v. Canney*, 562 A.2d 1315, 1316–17 (N.H. 1989) (stating the general rule that a "defendant may not collaterally attack an [administrative] habitual offender determination" in a criminal enforcement action).

In other contexts, see, e.g., *Martin v. Wolfson*, 16 N.W.2d 884, 888–89 (Minn. 1944) (recognizing extension of the rule prohibiting collateral attacks to administrative orders other than rule-making, where the asserted errors render the decisions "voidable" as opposed to in excess of constitutional power or statutory authority); *Department of Conservation v. Sowders*, 244 S.W.2d 464, 467 (Ky. Ct. App. 1951) (applying "[t]he general principle of law that the absence of jurisdiction of an administrative body to render a particular decision constitutes sufficient cause for a collateral attack"); *Hystad v. Mid-Con Exploration Co.-Exeter*, 489 N.W.2d 571, 572, 575 (N.D. 1992) (dismissing private action as impermissible collateral attack on an administrative order); *Skeen v. Department of Human Res.*, 17 P.3d 526, 529 (Or. App. 2000) (applying rule prohibiting collateral attacks to an administrative order).

¶ 18. The circuit court granted the State's motion. In response to the specific argument advanced by Hershberger, the court found that Hershberger "had a right to a review and appeal of the . . . June 2, 2010 holding order." The court found that Hershberger "could have requested a contested hearing and an informal hearing to challenge the order [and i]n the process . . . contested the adequacy of the grounds for the holding order," but that he "did not avail himself of that right."

¶ 19. More generally, the court ruled that Hershberger's challenge to the holding order's validity is "a collateral attack that's prohibited." The court stated that it did not "think it's the law that [Hershberger] can elect [his] remedy to act, to say I'm just going to disobey it and then get a criminal trial over whether or not there was a reasonable . . . cause to issue the order in the first place."

 ██

¶ 20. The following is our standard of review in addressing Hershberger's challenge to the circuit court's decision to exclude evidence offered to support a collateral attack on the holding order.

> A determination as to the admissibility of evidence is within the discretion of the circuit court and will be reversed only if the court erroneously exercised its discretion. A circuit court's discretionary decision is upheld as long as the court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." [To the extent that Hershberger] contends the circuit court applied an improper standard of law when it prevented him from collaterally attacking the [holding] order, we review the circuit court's decision to exclude evidence pertaining to the validity of the order independent of the circuit court.

*Campbell*, 294 Wis. 2d 100, ¶ 27 (citations and quoted source omitted).

### C. *Hershberger's Arguments Against the Circuit Court's Collateral Attack Ruling*

¶ 21. Hershberger contends that the circuit court erred in three main respects. We address each of his contentions in turn.[5]

¶ 22. First, Hershberger argues that the rule prohibiting collateral attacks applies only to prior judicial orders or judgments, not to prior administrative orders.[6] In support, he makes one argument that we do not understand and another argument based on the

---

[5] We note that Hershberger also contends that the circuit court "erred in holding that . . . Hershberger's alleged failure to exhaust administrative remedies challenging the June 2, 2010 holding order prior to being charged with a crime precluded him from attacking the factual bases of the holding order at his criminal trial." However, the circuit court did not apply the exhaustion of administrative remedies doctrine, but instead ruled on "whether [Hershberger] should be allowed to collaterally attack the June 2, 2010, holding order." Because the circuit court did not apply the exhaustion of administrative remedies doctrine, we do not address Hershberger's arguments against application of that doctrine.

[6] It appears that Hershberger did not make this first argument before the circuit court and has therefore forfeited it. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997) ("'The general rule is that issues not presented to the circuit court will not be considered for the first time on appeal."); *State v. Rogers*, 196 Wis. 2d 817, 829, 539 N.W.2d 897 (Ct. App. 1995) ("[T]he appellant [must] articulate each of its theories to the trial court to preserve its right to appeal."); *see also State v. Huebner*, 2000 WI 59, ¶ 11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727 (noting that the rule requiring issue preservation, previously referred to as the "waiver rule" is more precisely labeled the "forfeiture rule"). However, the rule of forfeiture is one of judicial administration and does not limit the power of an

purported absence of any reported case applying the rule to an administrative order.

¶ 23. Hershberger asserts that the rule prohibiting collateral attacks does not apply here because the court of appeals does not lie "outside the chain of appeal" of the holding order. Hershberger fails to explain what this assertion means, much less does he cite any authority to support whatever his argument might be. We reject this assertion because it is not part of a developed legal argument or supported by legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("We may decline to review issues inadequately briefed," and "[a]rguments unsupported by references to legal authority will not be considered.").

¶ 24. As for the absence of any reported case applying the rule to an administrative order, Hershberger fails to acknowledge any of the persuasive authority we have cited above, including the fact that the United States Supreme Court decision establishing the due process exception to the rule (noted above) involved an administrative order. *Mendoza-Lopez*, 481 U.S. at 837 (referring to an administrative proceeding involving a prior deportation order by an immigration judge). As we have summarized above, the widely established rule in other jurisdictions is that the collateral attack rule applies equally to both prior judicial orders and prior administrative orders. Moreover, we see no rea-

appellate court, in the exercise of its discretion, to consider issues raised for the first time on appeal. *Caban*, 210 Wis. 2d at 609. Here, the State has not raised the forfeiture rule in response to Hershberger's argument, the issue argued by Hershberger is a question of law, and the parties have fully briefed that issue. For these reasons, while we could ignore this issue on appeal, we elect to address the issue as if it had been preserved.

son, based on Wisconsin precedent addressing the collateral attack rule, that this should not be the law in Wisconsin.

¶ 25. Applying the rule to both judicial and administrative orders, where the administrative orders are subject to meaningful direct review, equally promotes "the finality of prior judgments," "confidence in the integrity of our procedures," and "the orderly administration of justice." *See Nicole W.*, 299 Wis. 2d 637, ¶ 28. As the District of Columbia Court of Appeals has stated, the rule prohibiting collateral attacks on prior judicial and administrative orders

> is essential to the order of our civil litigation system. This system already incorporates appellate review as a means of error-correction, and, to have any value, it must ensure that, at some point, cases end. This system also relies heavily on the administrative resolution of disputes, which is meant, at least in part, to reduce litigation in the courts. To allow parties to re-litigate their administrative claims in a collateral proceeding in [the trial court] . . . would supersede this administrative scheme.

*Mitchell v. Gales*, 61 A.3d 678, 684 (D.C. 2013) (citations and footnotes omitted).

¶ 26. Here, as we show below, applicable law provides multiple pathways for someone in Hershberger's position to challenge an administrative order on the ground that it lacks a factual basis. We discern no relevant distinction between judicial and administrative orders under the law that has developed the rule prohibiting collateral attacks on prior orders and judgments, and Hershberger identifies no such distinction.

¶ 27. Hershberger's second main argument is that his claim that the holding order was issued without any

237

factual basis should be treated as a claim that the holding order was "void" and therefore open to collateral attack.[7] However, Hershberger's claim that the holding order was issued without a factual basis is not a claim that it was issued without legal authority. *See* 2 AM. JUR. 2D *Administrative Law* § 373 (2014) (an administrative order "is immune from collateral attack, unless the order is void because it was issued without, or in excess of, statutory power"). Rather, his claim that the order lacked a factual basis is a claim that the order was erroneously issued, and as we have summarized above, a prior order is not subject to collateral attack on the grounds that it was erroneous. *See Campbell,* 294 Wis. 2d 100, ¶ 42 (an erroneous order or judgment is enforceable until it has been reversed, modified, or set aside, and " 'is not subject to collateral attack' ") (quoted source omitted). Hershberger fails to explain why his attack on the factual basis for the holding order was not a collateral attack on a purportedly erroneous order, and we therefore reject this argument as well.

¶ 28. Moreover, even if we assume that the order was issued without a factual basis, it would in that case have bound Hershberger until "he succeeded in reversing it through the applicable review process," *id.,* ¶ 49, which leads us to Hershberger's third main argument. Hershberger argues that the due process exception to the rule prohibiting a collateral attack on a prior order

---

[7] As with his first argument, it does not appear that Hershberger made this argument before the circuit court. Rather, he seems to have limited his challenge to the correctness of the facts asserted in the holding order, as opposed to the order's legality. However, the State has failed to raise the forfeiture rule in response. While we could ignore this issue on appeal, because the argument that Hershberger now makes is so inextricably intertwined with his other arguments, we exercise our discretion to address it. *See supra* note 5.

should apply here because he did not have a right to meaningful review of the holding order. This is an argument that was preserved before the circuit court.

¶ 29. The parties agree that Hershberger did not have any statutory right to administrative review of the holding order. However, as the State explains, "there is plainly an administrative right to a hearing on" holding orders, and Hershberger does not refute the existence of such a right. Instead, Hershberger argues that the regulatory scheme is too complex, the holding order provided no notice of the administrative right to review, and availing himself of such a right would have been futile. As we explain, none of these arguments persuades us that the due process exception to the prohibition against a collateral attack on a prior administrative order applies here.

### D. The Review Process

¶ 30. In order to provide context for our analysis of Hershberger's arguments, we set out the regulatory scheme that provides for the right to review of a holding order. As noted above, pursuant to WIS. STAT. § 97.12(2)(a), a DATCP inspector may issue a holding order, which prohibits the sale or movement of the food listed in the order for up to fourteen days until the food can be analyzed or examined. DATCP regulations provide that the recipient of a holding order may seek review of that order in one of three ways.

¶ 31. WISCONSIN ADMIN. CODE ch. ATCP 1 (entitled "Administrative Orders and Contested Cases") provides the first possible avenue for review of a holding order. A holding order issued under WIS. STAT. § 97.12(2)(a) is a "summary special order" under WIS. ADMIN. CODE

239

§§ ATCP 1.03(1)(a)5. and 1.01(26) and (28). Such an order is subject to review under Wis. Admin. Code § ATCP 1.03(3)(a), which provides that the person against whom the order is issued may request an informal hearing, a contested case hearing under Wis. Admin. Code § ATCP 1.06, or both. DATCP must hold the informal hearing "as soon as reasonably possible, but not more than 20 days after the department receives the hearing request." Wis. Admin. Code § ATCP 1.03(3)(c). The holding order may be stayed or modified at the informal hearing. Wis. Admin. Code § ATCP 1.03(3)(e). These are not mutually exclusive pathways. "A request for an informal hearing does not preclude a subsequent request for a contested case hearing." Wis. Admin. Code § ATCP 1.03(3)(b). A recipient adversely affected by a decision in a contested case hearing may seek judicial review under Wis. Stat. §§ 227.52–53. *See also* Wis. Admin. Code § ATCP 1.31(5).

¶ 32. The rules relating specifically to dairy farms, in Wis. Admin. Code § ATCP 60.30 (entitled "Holding orders") and Wis. Admin. Code § ATCP 60.31 (entitled "Right of hearing") provide a second possible avenue for review of a holding order. Under § ATCP 60.30(1), an inspector may issue a holding order specifically relating to milk or a milk product. Under § ATCP 60.31(1)-(3)(a), a recipient of a holding order may request a hearing within ten days after receiving the order, and DATCP must hold the informal hearing within ten business days after it receives the hearing request. The hearing is limited to the question of whether adequate grounds existed for issuance of the holding order, and DATCP must issue a memorandum summarizing the result of the hearing within two days after its conclusion. Wis. Admin. Code § ATCP 60.31(3)(b). Within ten days after issuance of the

240

memorandum, a contested case hearing pursuant to WIS. STAT. ch. 227 and WIS. ADMIN. CODE ch. ATCP 1 may be requested. WIS. ADMIN. CODE § ATCP 60.31(4).

¶ 33. Finally, the holding order here also listed meat food products among the items covered by the order, and the rules relating to meat food products set forth at WIS. ADMIN. CODE § ATCP 55.14 (entitled "Enforcement") and WIS. ADMIN. CODE § ATCP 55.15 (entitled "Appeals") provide a third possible avenue for review of a holding order. Under § ATCP 55.14–.15, DATCP "may issue a holding order to prohibit the sale or movement of any meat or meat food product"; the holding order remains in effect for fourteen days "unless the department withdraws it earlier"; the recipient may ask DATCP to reconsider the holding order; upon such request DATCP must schedule a prompt informal conference with the requestor; and if the dispute is not resolved the requestor may seek a contested case hearing under WIS. STAT. ch. 227 and WIS. ADMIN. CODE ch. ATCP 1.

¶ 34. Thus, via any one of three regulatory schemes set forth at WIS. ADMIN. CODE § ATCP 1.03, 60.30–31, and 55.14–15, a recipient of a holding order may immediately seek a prompt informal hearing and later, if the recipient would like, a formal contested case hearing. In addition, the holding order that was issued to Hershberger states, "The Department prohibits the sale or movement of any of these products *without written permission* during the duration of this holding order." (Emphasis added.) This suggests that DATCP may also take action in response to contact from the recipient outside of the review processes spelled out in the regulations.

## E. *Hershberger's Remaining Arguments on Collateral Attack*

¶ 35. Hershberger asserts that even if there were a right to review, "the complexity of the statutes" prevented him from challenging the factual basis for the holding order other than as a collateral attack in this criminal prosecution. We reject this argument because it ignores the three clear regulatory paths, set forth above, providing for review of the holding order.

¶ 36. Next, Hershberger asserts that he "had no way of knowing he had a right to appeal the original holding order because it was [not] stated on the holding order."[8] Hershberger does not connect this assertion to any case law concerning the rule against collateral attacks of prior orders. He does not cite to any law stating that the due process exception to the rule prohibiting collateral attacks on prior administrative orders in criminal proceedings requires that a defendant be informed of the process for review of the orders, in addition to requiring that the law provide for that review.[9] Therefore, we reject this argument because it is unsupported by legal authority.

---

[8] It is undisputed that the holding order did not contain any notice of appeal rights.

[9] We note that, with respect to the exhaustion of remedies doctrine from which Hershberger appears to derive his concept of notice, notice of the right to review is required only for administrative decisions arising out of contested case proceedings, and the absence of such notice for noncontested case decisions has no effect on a party's right to administrative review other than to extend the time for seeking judicial review. *See Collins v. Policano*, 231 Wis. 2d 420, 435, 437, 605 N.W.2d 260 (Ct. App. 1999) ("formal notice of the right to judicial review . . . need be given only in or with administrative decisions arising out of contested case proceedings"; and whereas

¶ 37. Hershberger next asserts that review of a holding order would be impractical and futile, because the fourteen-day duration of the order would lapse and the food products covered by the order would spoil by the time he would be able to obtain relief from review. The State responds that Hershberger ignores the rule providing for stays of holding orders, Wis. ADMIN. CODE § ATCP 1.03(3)(e); the availability of compensation by the Claims Board for any food spoiled as a result of a holding order found to be erroneous in the administrative appeal process under Wis. STAT. § 16.007; and the possibility of obtaining relief through written permission by DATCP during the duration of the holding order, as stated on the order itself.

¶ 38. Hershberger does not explain why he is entitled to application of the due process exception to the collateral attack rule, solely because any relief he might obtain from an erroneous order, afforded through the review process and through the other avenues identified by the State, may come only after the order has expired. Accordingly, we reject Hershberger's argument as unsupported.

¶ 39. Hershberger also asserts that review of a holding order would be "substantively illogical" because it would only weigh the quality of "the investigator's subjective assessment" without the benefit of the testing that takes place after the holding order is in place, which is the only way to confirm or refute the investigator's assessment. However, as the State points

the statute sets a deadline of thirty days for seeking judicial review of contested case proceedings, a six-month limitation applies for seeking review of noncontested case decisions). Hershberger does not explain whether or how this law ties in to the due process exception to the rule prohibiting collateral attacks on prior orders in criminal proceedings enforcing those orders.

out, a holding order may be issued only when the investigator has "reasonable cause to believe" that food needs to be held until it is tested, and "reasonable cause to believe" is an inherently objective standard that may be examined based on the facts that were before the investigator at the time of issuing the holding order. *See Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶¶ 50–51, 251 Wis. 2d 68, 640 N.W.2d 788 (" 'Reasonable cause is more than suspicion but less than a preponderance of evidence,' " which may be established based on facts in the record.) (quoted source omitted). Hershberger does not explain why, under this objective, fact-based standard, he could not have tested the factual basis for the investigator's observations through one of the options for review summarized above.

### 2. Admission of Redacted Holding Order and Rule of Completeness

¶ 40. The State introduced into evidence a copy of the holding order with certain language redacted. The redacted copy, with the redacted language identified as "redaction A" and "redaction B," read as follows:

> You are hereby notified pursuant to Section 97.12, Wisconsin Statutes, that the undersigned inspector of the Wisconsin Department of Agriculture, Trade and Consumer Protection [redaction A] This holding order is issued for 14 days pursuant to Section [9]7.12(2)(a) of the Wisconsin Statutes [redaction B] A holding order may be effective for a period of not longer than 14 days from the time of its delivery, but it may be reissued for one additional 14–day period if necessary to complete the analysis or examination of the food. The following product(s) are covered by this holding order: [a list of six milk and meat products contained on the redacted version]. The Department prohibits the sale or movement of any of these products without written permission during the duration of this holding order.

244

¶ 41. The language in "redaction A" in the holding order stated that the inspector "has reason to believe that the products listed below may be either: Misbranded [or] Adulterated and in violation of the Wisconsin Statu[t]es." The language in "redaction B" of the holding order quoted the text of Wis. Stat. § 97.12(2)(a):

> Whenever any duly authorized inspector of the Department has reasonable cause to believe that any food so found and examined by him or her is adulterated or misbranded and is dangerous to health or misleading to the injury or damage of the purchaser or consumer, the inspector shall issue and deliver to the owner or custodian of the food a holding order prohibiting the sale or movement of the food for any purpose until the analysis or examination of the sample obtained has been completed.

¶ 42. Hershberger argued to the circuit court that the rule of completeness entitled him to present the entire order to the jury.[10] The court rejected Hershberger's argument based on its determination that the redacted language, which identified the factual basis for the holding order, was not relevant. On appeal, Hershberger renews his argument that "[t]he evidentiary rule of completeness required that the entirety of the [holding order] be introduced at trial and published to the jury."

¶ 43. The rule of completeness is "designed to make the presentation of evidence fair and effective in order to ascertain the truth." *State v. Eugenio*, 219

---

[10] The rule of completeness is codified at Wis. Stat. § 901.07, which states: **"Remainder of or related writings or recorded statements.** When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

Wis. 2d 391, 410, 579 N.W.2d 642 (1998). "The critical consideration in rule of completeness cases is whether the part of the statement offered into evidence creates an unfair and misleading impression without the remaining statements." *Id.* at 411. "The trial court must first determine if the partial evidence admitted has in fact created a distorted view of the evidence as a whole. If it has, the court must determine what additional portions of the evidence are necessary to cure the distortion. These decisions are discretionary." *State v. Anderson*, 230 Wis. 2d 121, 136, 600 N.W.2d 913 (Ct. App. 1999) (citation omitted). When we review a circuit court's discretionary decision, we may independently search the record to uphold its ruling. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983).

¶ 44. Hershberger argues that the entire text of the holding order was "relevant and essential to give context and prevent distortion" regarding his challenge to the factual basis for issuance of the order. However, we conclude that the redaction of the identification of the basis for issuing the order did not create "an unfair and misleading impression" of the order. *Eugenio*, 219 Wis. 2d at 411. We agree with the State that the redaction "did not distort the fact that a holding order was issued to Hershberger, that it covered certain specified food products, and that it temporarily prohibited Hershberger from selling or moving any of those products so they could be analyzed or examined." Accordingly, the redacted version of the holding order did not create a distorted view of the holding order as a whole. *See Anderson*, 230 Wis. 2d at 136 (the rule of completeness begins with the determination whether "the partial evidence admitted has in fact created a distorted view of the evidence as a whole").

¶ 45. The rule of completeness rests on the principle that the additional portions of evidence sought to be introduced are relevant. *See Eugenio*, 219 Wis. 2d at 410 (the rule of completeness allows the circuit court to permit the presentation of an entire statement as " 'an issue of logical relevance' ") (quoted source omitted). The redacted language of the holding order identifying the factual basis for issuing the order was not relevant to any issue properly before the jury in this case. The factual basis for issuing the order was not an element of the offense of violating the holding order under Wis. Stat. § 97.12(2)(d)1. In addition, we have already concluded that Hershberger was properly prohibited from presenting evidence relating to the factual basis for issuing the order under the collateral attack rule. Therefore, the circuit court properly exercised its discretion in prohibiting introduction of the language in the order relating to that topic as not relevant.

### 3. Right to Present a Defense

¶ 46. Hershberger argues that the evidentiary rulings by the circuit court, which prohibited him from presenting evidence challenging the factual basis for the holding order, denied him his constitutional right to present a defense.[11] His self-identified defense was to collaterally attack the factual basis for the holding

---

[11] Hershberger also identifies a fourth evidentiary ruling as denying him his constitutional right to present a defense. That ruling prohibited him from introducing certain evidence relating to DATCP's issuing of licenses. Because that ruling related to the three counts charging Hershberger with failing to obtain licenses, on which he was acquitted, it was not relevant to the count charging Hershberger with violating the holding order, on which he was convicted and which is the subject of this appeal. Therefore, we do not address Hershberger's challenge to that ruling.

order that he admitted violating, and the circuit court rejected his asserted constitutional right to present that defense because "evidence regarding the grounds, or basis, for the holding order is not relevant and is inadmissible."

¶ 47. We agree with Hershberger that his constitutional right to present a defense generally "requires admission of relevant evidence offered by the defense." However, as we have already concluded, the defense that he sought to present, challenging the factual basis for the holding order, was neither relevant nor admissible, and could only have been presented through administrative and judicial review of the order as provided by the applicable regulations and statutes. Accordingly, we conclude that the circuit court's evidentiary rulings prohibiting Hershberger from collaterally attacking the factual basis for the holding order in this action enforcing that order did not deny Hershberger his asserted constitutional right to present a defense in this case.

## CONCLUSION

¶ 48. In sum, we conclude that the circuit court properly prohibited Hershberger from collaterally attacking the factual basis for issuance of the holding order, that the circuit court properly prohibited Hershberger from introducing into evidence an unredacted version of the holding order, and that the circuit court's evidentiary rulings did not deny Hershberger his asserted constitutional right to present a defense. Accordingly, we affirm.

*By the Court.*—Judgment affirmed.