COURT OF APPEALS
DECISION
DATED AND FILED

October 17, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1396-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CM754

IN COURT OF APPEALS
DISTRICT I

IN THE MATTER OF THE FINDING OF CONTEMPT IN STATE V. ARIELLE A. SIMMONS:

ATTORNEY THOMAS L. POTTER,

APPELLANT,

V.

CIRCUIT COURT FOR MILWAUKEE COUNTY, THE HONORABLE KORI ASHLEY, PRESIDING,

RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: KORI LYNN ASHLEY, Judge. *Affirmed*.

¶1     DUGAN, J.[1]   Thomas L. Potter[2] appeals from an order of the circuit court, the Honorable Kori Ashley presiding, summarily finding him in contempt of court for violating the court's order that the victim witnesses, Donald and Frank,[3] "are to be instructed that they are not allowed in the courtroom during opening statement, and then during any part of the trial until they have testified."  The day after the circuit court issued the order, Potter advised the court that he had sent an email to Donald advising him of the court's order, but invited him to attend the opening statements and other portions of the case because he believed the court's order "to be inconsistent with Wisconsin law, and wish[ed] to have it reviewed by an appellate court."  Potter then stated that he realized "that by sending this email I have put myself in defiance of the [c]ourt's order, and I did that intentionally with the understanding that the [c]ourt would appropriately find me to be in contempt of that order."  The circuit court then found that Potter was in contempt of the court's order and imposed a $500 fine on Potter.

¶2     On appeal, Potter argues that:  (1) the sequestration order was erroneously rendered and his defiance of that order provided the only meaningful opportunity to review it; (2) he had a duty under the Wisconsin Constitution and Wisconsin Statutes to protect the rights of the victims; (3) the order was erroneous

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(h) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  Potter was the assistant district attorney who was prosecuting the case against defendant Arielle Simmons in the underlying criminal case.  Thus, we note that he was acting on behalf of the State.  We also note that the Circuit Court for Milwaukee County is the respondent in this case and is represented by the Wisconsin Attorney General's Office.  Potter is being represented by the Milwaukee County District Attorney's Office.

[3]  Pursuant to WIS. STAT. RULE 809.86, we refer to the victims in this matter using a pseudonym.

because it was a direct violation of the Wisconsin Constitution and Wisconsin Statutes; (4) the circuit court did not have competency to issue the order and because the court issued an order that it could not make after the 2020 Amendment to the Wisconsin Constitution and Wisconsin Statutes, the order was void.

¶3    In effect, Potter is attempting to collaterally attack the circuit court's sequestration order by appealing the court's order finding him in contempt for violating the sequestration order. This court concludes that he cannot do so and affirms the circuit court's order finding him in contempt.

## BACKGROUND

¶4    In the underlying case, the State charged Arielle Simmons with misdemeanor battery and disorderly conduct. The amended complaint alleged that she "started swinging at [Donald] and struck him in the face causing pain" and that she spilled coffee on Frank. Donald and Frank are both criminal defense attorneys. Donald had been representing Simmons' boyfriend in his criminal case, but had withdrawn as his attorney at the boyfriend's request in court on the day of the incident with Simmons.[4]

¶5    Simmons' case was set for trial on March 7, 2022. On February 18, 2022, trial counsel filed a motion in limine asking the circuit court "to prohibit the complaining witness [victim] be excluded from the courtroom, along with all other witnesses, when not testifying." Counsel argued that sequestration was necessary to provide Simmons with a fair trial. On February 22, 2022, the State filed a

---

[4] The incidents occurred at the Milwaukee County Safety Building which is part of the court complex.

3

response to the motion in limine, arguing that it was inconsistent with Wisconsin law. On March 7, 2022, the trial was adjourned to May 31, 2022.

¶6 On May 31, 2022, the State filed a document titled, "State's Defense of Victim's Statutory and Constitutional Right to Attend Entire Trial" asserting the right of the victims not to be physically excluded from the courtroom during the trial. After hearing the parties' arguments regarding the motion to sequester the victims, the circuit court stated that a victim's right to be present during court proceedings is not absolute under "Marsy's Law."[5] It stated that under Marsy's Law, a victim's constitutional rights are not intended and may not be interpreted to supersede a defendant's "federal constitutional rights, namely a right to a fair trial." It further stated that WIS. STAT. § 906.15(2)(d)[6] "explicitly allows a court to exclude alleged victims if an appropriate showing is made." The circuit court then stated that "[t]he [c]ourt makes a finding under [§] 906.15(2d) [sic] that the defense theory of the case necessitates the finding and sequestration of, I will say, the alleged victims, as outlined, this theory of alleged provocation." Finally, the court ordered that "[t]he alleged victims may not be present for opening statements and until they testify."

---

[5] "Marsy's Law" is a victim's rights amendment to the Wisconsin Constitution that was generally termed "Marsy's Law" by its sponsors and was ratified by the people in April of 2020. *See* WIS. CONST. art. I, § 9m. It will be discussed in more detail below.

[6] WISCONSIN STAT. § 906.15(1) provides in part that "[a]t the request of a party, the judge … shall order witnesses excluded so that they cannot hear the testimony of other witnesses." By contrast, § 906.15(2)(d) provides, in part, that "[s]ubsection (1) does not authorize exclusion of any of the following: … [a] victim as defined in [WIS. STAT. §] 950.02(4) … unless the judge or circuit court commissioner finds that exclusion of the victim is necessary to provide a fair trial for the defendant …. The presence of a victim during the testimony of other witnesses may not by itself be a basis for a finding that exclusion of the victim is necessary to provide a fair trial for the defendant[.]"

¶7 On May 31, 2022, after issuing the order, the circuit court proceeded with jury selection. The court then adjourned until 1:15 p.m. on June 1, 2022. At that time, the circuit court stated that there was a sidebar conference with the lawyers and that it was going to let Potter "make his own record regarding what he intends to do to create an appealable record." Potter then stated that "[t]he State means no disrespect by this, but … this is the only way we can think of preserving the appeal of the question of the victim attendance." He went on to say that "just a couple of minutes ago, I sent an email to the primary victim in this case, [Donald.]" He then read the email into the record as follows:

> [Donald], understanding that you have expressed an interest in attending the opening statements, and perhaps other portions of [this case], as is your right as a victim, and understanding also that Judge Ashley has ordered you excluded until after you have testified, I am nevertheless inviting you to [attend] the opening statement because I believe Judge Ashley's order to be inconsistent with Wisconsin law, and wish to have it reviewed by an appellate court[.]

The circuit court then stated that the email was in "flagrant violation of the order that the [c]ourt entered yesterday regarding exclusion of the alleged victim in this case, pursuant to Wisconsin State Statute, the [c]ourt makes a finding that the State is in contempt of that order and will issue a fine in the amount of $500."[7]

¶8 This appeal follows.

---

[7] At Potter's request, the circuit court clarified that it was finding him in contempt and the fine was imposed against him personally.

## DISCUSSION

¶9      As noted, on appeal Potter argues that:  (1) the sequestration order was erroneously rendered and his defiance of that order provided the only meaningful opportunity to review it; (2) he had a duty under the Wisconsin Constitution and Wisconsin Statutes to protect the rights of the victims; (3) the order was erroneous because it was a direct violation of the Wisconsin Constitution and Wisconsin Statutes; (4) the circuit court did not have competency to issue the order and because the court issued an order that it could not make after the 2020 Amendment to the Wisconsin Constitution and Wisconsin Statutes, the order was void.

¶10     In effect, Potter is attempting to collaterally attack the circuit court's sequestration order by appealing the court's order finding him in contempt for violating the sequestration order.  This court concludes that he cannot do so.

### I.      The Collateral Attack Rule

¶11     The parties agree that the orderly and expeditious administration of justice requires parties to obey an order issued by a court until it is reversed by proper proceedings.  They each cite to the United States Supreme Court's decision in *Maness v. Meyers*, 419 U.S. 449, 459 (1975).  In *Maness*, the Court summarized the principles of the collateral attack rule as follows:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal…. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.  This principle is especially applicable

> to orders issued during trial. Such orders must be complied with promptly and completely, for the alternative would be to frustrate and disrupt the progress of the trial with issues collateral to the central questions in litigation. This does not mean, of course, that every ruling by a presiding judge must be accepted in silence. Counsel may object to a ruling.… But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders. While claims of error may be preserved in whatever way the applicable rules provide, counsel should neither engage the court in extended discussion once a ruling is made, nor advise a client not to comply. A lawyer who counsels his client not to comply with a court order during trial would, first, subject his client to contempt, and in addition, if he persisted the lawyer would be exposed to sanctions for obstructing the trial.

*Id.* (footnote, citations, and one set of quotations omitted).

¶12 This court also addressed the collateral attack rule in *State v. Hershberger*, 2014 WI App 86, 356 Wis. 2d 220, 853 N.W.2d 586. We explained that "collateral attacks on prior judicial orders … are generally prohibited, but this rule may not apply where the order or judgment was procured by fraud, the order … was void because the court acted without jurisdiction, or there was no meaningful opportunity for review of the order[.]" *Id.*, ¶13. This court further explained that

> While a void judicial order or judgment is not binding on anyone, an allegedly erroneous order or judgment has the same force and effect as a valid judgment. Consequently, where a court has jurisdiction over the subject matter and the parties, the fact that an order or judgment is erroneously or improvidently rendered does not justify a person in failing to abide by its terms. Rather, a person must abide by the terms of an allegedly erroneous order or judgment until he [or she] succeed[s] in reversing it through the applicable review process.

*Id.*, ¶11 (citations, quotations, and brackets omitted).

7

¶13    This court next addresses whether Potter has shown that there is an exception to the collateral attack rule in this case.

## II.    This court concludes that Potter has not shown that an exception to the collateral attack rule applies in this case

¶14    Potter argues that the exception for not following the collateral attack rule to a court order where there is no meaningful opportunity for review of the order applies in this case because "[t]he underlying order excluding victims from the trial was erroneously rendered and Potter's defiance of that order provided the only meaningful opportunity for review."  Citing *State v. Campbell*, 2006 WI 99, ¶¶57-58, 294 Wis. 2d 100, 718 N.W.2d 649, he argues that "the rule prohibiting a collateral attack on a prior order or judgment may not apply where there was no meaningful opportunity for review of the order or judgment."[8]

¶15    The question before this court then is whether there is a meaningful opportunity for review of the circuit court's sequestration order excluding Donald

---

[8] This court notes that its decision is limited to whether Potter has shown that an exception to the collateral attack rule applies in this case.  Potter does not assert that the circuit erred in finding him summarily in contempt of court under WIS. STAT. § 785.03(2), rather than following the nonsummary procedure under § 785.03(1).  Thus, this court does not address whether Potter's sending the victim an email outside the presence of the court constituted committing "a contempt of court in the actual presence of the court."  *See* § 785.03(2).  This court further does not address whether the "judge [imposed] the punitive sanction immediately after the contempt of court and only for the purpose of preserving order in the court and protecting the authority and dignity of the court."  *Id.*  This court notes that the circuit court's only finding of fact was that Potter "read into the record an email that is in flagrant violation of the order that the [c]ourt entered yesterday regarding exclusion of the alleged victim in this case, pursuant to the Wisconsin State Statute, the [c]ourt makes a finding that the State is in contempt of that order and will issue a fine in the amount of $500."  This court also notes that Potter advised the court he understood that the court would "appropriately find me to be in contempt of that order."  Nor does this court address whether Potter's conduct constituted contempt under WIS. STAT. § 785.01(1)(a) and (b), which provides "[c]ontempt of court" means intentional "[m]isconduct in the presence of the court which interferes with a court proceeding or with the administration of justice, or which impairs the respect due the court" or "[d]isobedience, resistance or obstruction of the authority, process or order of a court."

and Frank from the courtroom during the trial until after they testified, other than Potter needing to be found in contempt of court for violating that order. The circuit court first argues that the State could have filed a petition for a supervisory writ to challenge the sequestration order pursuant to WIS. STAT. RULE 809.51(1). Second, it argues that under the Wisconsin Constitution, Donald or Frank could have sought review of the sequestration order. In support of its argument, it cites WIS. CONST. art. I, § 9m(4)(b), which provides that "[v]ictims may obtain review of all adverse decisions concerning their rights as victims by courts or other authorities with jurisdiction ... by filing petitions for supervisory writ in the court of appeals and supreme court."[9] Third, it argues that Potter could have pursued an interlocutory appeal and could have moved the circuit court for a continuance. The circuit court then asserts that while an interlocutory appeal may not have been granted, the rule against collateral attacks on prior judicial orders only requires a

---

[9] This court notes that the Wisconsin Constitution also authorizes attorneys for the government, for example prosecutors, to enforce victim's rights. WISCONSIN CONST. art. I, § 9m(4)(a), provides:

> In addition to any other available enforcement of rights or remedy for a violation of this section or of other rights, privileges, or protections provided by law, the victim, the victim's attorney or other lawful representative, or the attorney for the government upon request of the victim may assert and seek in any circuit court … enforcement of the rights in this section and any other right, privilege, or protection afforded to the victim by law.

Thus, under this provision, upon the request of Donald or Frank, Potter could have directly appealed the circuit court's grant of the sequestration order.

meaningful opportunity for review and filing for an interlocutory appeal was a meaningful opportunity.[10]

¶16 In his reply brief, Potter argues that none of the opportunities that the circuit court raises constitute meaningful opportunities because the trial was proceeding and "any opportunity for appellate review of victim exclusion expired upon completion of the trial. That is to say that whether Simmons was convicted or acquitted, the issue would be moot." He asserts that as a general rule, a court will not consider a question the answer to which cannot have any practical effect upon an existing controversy. He then argues that "[a]ny verdict moots the issue of whether the court's order was in violation of the victim's right to attend the trial, as the case is over and double jeopardy applies." He also argues that "[t]he court had made clear that the trial was moving forward and any request for a permissive appeal under WIS. STAT. § 808.03(2) would not have automatically resulted in a stay of the trial."

¶17 Potter then argues that the inevitable mooting of the issue regarding the sequestration order makes this situation similar to the facts in *Maness*. In *Maness*, the trial court, during trial, ordered a witness to produce allegedly obscene magazines, which had been subpoenaed for the purpose of enjoining their distribution. *Id.*, 419 U.S. at 453-54. The court found the attorney in contempt for advising his client that he could refuse to produce the magazines on Fifth

---

[10] This court notes that the circuit court does not develop this argument—it only makes the conclusory statement that an interlocutory appeal is a meaningful opportunity. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

Amendment grounds.[11] *Id.* at 455. As Potter points out, the *Maness* court began by noting the basic principle that all orders and judgments of courts must be complied with and if a person to whom a court directs an order believes that the order is incorrect, the remedy is to appeal, and he or she must comply promptly with the order pending appeal. *See id.* at 458-59. Potter then notes that the court went on to acknowledge that an order by a court to reveal information at trial presents a different situation than other types of orders that the collateral bar rule applies to. *See id.* at 460. He states that the court went on to state that compliance with such an order could cause "irreparable injury because appellate courts cannot always 'unring the bell' once the information has been released." *See id.* Potter then argues that, "[t]herefore, a party to whom such an order is directed may disobey the order and collaterally attack its validity during contempt proceedings."

¶18 The circuit court responds to Potter's arguments regarding the holding in *Maness* by asserting that *Maness* is distinguishable because it involved the Fifth Amendment privilege against self-incrimination and, specifically, the compelled disclosure of information. It argues that here there was no compelled disclosure of information when Donald and Frank were sequestered—the sequestration only limited their access to information adduced at trial. This court agrees with the circuit court's argument and concludes that the decision in *Maness* is distinguishable from the facts in this case, and therefore, under *Maness*, Potter cannot disobey the order and collaterally attack its validity using contempt proceedings.

---

[11] The Fifth Amendment to the United States Constitution protects an individual from self-incrimination, meaning "an individual is not compelled to produce evidence which later may be used against him [or her] as an accused in a criminal action." *Maness v. Meyers*, 419 U.S. 449, 461 (1975).

11

¶19     Thus, the issue this court next addresses is whether a challenge to the circuit court's issuing the sequestration order is moot such that it cannot be reviewed except by a collateral attack through an appeal of the contempt order. First, this court notes that both Potter and the circuit court agree that the issue is moot. Potter states that "[a]ny opportunity for appellate review of victim exclusion expired upon completion of the trial.… [T]he issue would be moot." The circuit court agrees that the validity of the sequestration order is moot upon completion of the trial.[12]

¶20     This court agrees with the parties that the issue of whether the circuit court erroneously issued the sequestration order is moot. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. "In other words, a moot question is one which circumstances have rendered purely academic." *Id.* Here, pursuant to the circuit court's order, the victims were not in the courtroom until they testified and the trial was completed. Thus, a decision by this court as to whether the circuit court erroneously granted Simmons' motion to exclude the victims from the courtroom would have no practical effect on the case—an order from this court could not correct any error by the circuit court, if it were to find error, in excluding the victims.

¶21     However, the fact that the issue of whether the circuit court erroneously issued the sequestration order is moot does not end this court's

---

[12] The circuit court further states that Potter does not address any exceptions where appellate courts choose to address moot issues. This court notes that the circuit court does not argue that any exceptions to the general rule that courts do not address moot issues might apply in this case such that an appellate court might address the issue of whether the circuit court erroneously issued the sequestration order on a direct appeal of that order.

analysis of whether there is a meaningful opportunity for review of the circuit court's order. "[S]ometimes issues come to us that present, because of their characteristics or procedural posture, a need for an answer that outweighs our concern for judicial economy." *Waukesha Cnty. v. S.L.L.*, 2019 WI 66, ¶15, 387 Wis. 2d 333, 929 N.W.2d 140. In *Litscher*, this court explained that "[w]e will consider a moot point if the issue has great public importance, a statue's constitutionality is involved, or a decision is needed to guide the trial courts." *Id.*, 233 Wis. 2d 685, ¶3 (citation and one set of quotations omitted). It further stated that "[f]urthermore, we take up moot questions where the issue is likely of repetition and yet evades review because the situation involved is one that typically is resolved before completion of the appellate process." *Id.* (citation and one set of quotations omitted). In *Winnebago County v. Christopher S.*, 2016 WI 1, ¶32, 366 Wis. 2d 1, 878 N.W.2d 109 (citations omitted), our supreme court stated that:

> [W]e may decide an otherwise moot issue if it (1) is of great public importance; (2) occurs so frequently that a definitive decision is necessary to guide circuit courts; (3) is likely to arise again and a decision of the court would alleviate uncertainty; or (4) will likely be repeated, but evades appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties.

*See also* *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶12, 386 Wis. 2d 672, 972 N.W.2d 509.

¶22     The sequestration order in this case involves a constitutional issue regarding victim's rights under the recent amendment to the Wisconsin Constitution—Marsy's Law. There is little case law interpreting those victim's rights set forth in Marsy's Law and what findings circuit courts need to make when denying a victim's rights. However, in *State v. Johnson*, 2023 WI 39, 407

13

Wis. 2d 195, 990 N.W.2d 174, our supreme court discussed the expansion of victim's rights. It stated that

> the Wisconsin Constitution was amended to affirm that "[t]h[e] [S]tate shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy." A few years later, the legislature passed a comprehensive crime victims' bill of rights, which was subsequently amended to grant crime victims an enforceable right to "fairness and respect." And in 2020, voters ratified Marsy's Law, which amended the Wisconsin Constitution once again to guarantee crime victims the rights "[t]o be treated with dignity, respect, courtesy, sensitivity, and fairness," "[t]o privacy," … "throughout the criminal … justice process." Additionally, Marsy's Law guarantees that these rights will be "protected by law in a manner no less vigorous than the protections afforded the accused."

*Id.*, ¶44 (footnote and citations omitted; brackets in original). Clearly, our supreme court recognizes the expansion and the importance of victim's rights under the Wisconsin Constitution and statutes.

¶23 Thus, when an appellate court considers whether it should consider a moot issue regarding victim's rights—here, being sequestered from the trial—it would recognize the victim's rights are a matter of great public importance. Further, because the issue will likely be repeated and will evade appellate review because the appellate review process cannot be completed or even undertaken in time to have a practical effect on the parties—here, the victims who were excluded from the trial, an appellate court would also consider the absence of judicial interpretation of Marsy's Law and that a decision would guide circuit courts on the

issue.[13] Considering those factors, we conclude that an appellate court could decide to consider the issue even though it is moot, thus providing an opportunity for meaningful review on a direct appeal and precluding Potter's ability to collaterally attack the sequestration order by appealing the contempt order.

**CONCLUSION**

¶24    For the reasons stated above, this court concludes that because an appellate court may conclude that the issue of whether the circuit court erroneously excluded the victims from the courtroom during the trial may involve an exception to the general rule that appellate courts do not consider moot issues, a direct appeal of the circuit court's sequestration order would constitute a meaningful opportunity for the victims or the government attorney, here Potter, for review of that order.  Thus, this court concludes that Potter may not collaterally attack the circuit court's finding him in contempt of court on appeal and affirms the court's finding him in contempt.

*By the Court.*—Order affirmed.

---

[13] We note that Potter asserts that the circuit court erred because it did not adequately identify specific reasons for ordering the victims be excluded from the trial until they testified. He notes that the court referenced its "general practice" regarding sequestering witnesses.  This court notes that the record reflects that the circuit court stated that "[t]he purpose of sequestration is to assure a fair trial, specifically to prevent a witness from shaping his or her testimony based on the testimony of other witnesses.  Based on that, the [c]ourt is exercising authority under the statute[.]"  This court notes that the statute, WIS. STAT. § 906.15(2)(d), provides in part "[t]he presence of a victim during the testimony of other witnesses may not by itself be a basis for a finding that exclusion of the victim is necessary to provide a fair trial for the defendant[.]"  Marsy's Law also provides that the victim's rights are to "be protected by law in a manner no less vigorous than the protections afforded to the accused."  This court notes that its comments here are not intended to reflect that it would conclude that the circuit court erred in issuing the sequestration order—they merely reflect facts that this court would consider when deciding whether to address the moot issue if it was directly raised by the victims or by the government attorney—here Potter.  Thus, this court would consider if a decision on the issue would give guidance to circuit courts in future cases.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.