COURT OF APPEALS
DECISION
DATED AND FILED

November 7, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2023AP28-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF50

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

BRIAN D. PARCHEM,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Brian Parchem appeals a judgment of conviction for operating a motor vehicle while under the influence of an intoxicant as a fourth

offense. He was convicted after a jury trial. He argues that: (1) the police conducted an unconstitutional search of the exterior of his truck by touching the hood and the tailpipe; (2) the police conducted an unconstitutional search of the interior of his truck; (3) the police unlawfully extended his initial stop to investigate whether he was driving while intoxicated without reasonable suspicion; (4) the police unlawfully compelled him to submit to field sobriety tests; (5) his consent to submit to a blood test was not voluntary; (6) the police violated the implied consent law; (7) he was prejudiced by the circuit court's erroneous admission of evidence of a citizen complaint that he publicly exposed himself; and (8) he was prejudiced by the court's error relating to the number of his prior convictions for impeachment purposes. We affirm.

### Background

¶2 At about 5:43 p.m. on a winter evening, multiple law enforcement officers responded to a citizen complaint that a man was exposing himself in a public parking lot near a library. Police went to this parking lot and there found Parchem sitting in the driver's seat of a truck. Police identified him as the likely subject of the complaint and Parchem did not dispute that the truck belonged to him. The truck was not running at that time.

¶3 The police noticed that near the truck was an area of melted snow, which appeared to be consistent with someone having urinated there. Although Parchem did not admit to urinating next to his truck, the police concluded that he had engaged in public urination and determined that he should be issued a citation for that offense.

¶4 Upon initial contact with Parchem, one of the officers noticed that Parchem's eyes were glassy and that he smelled of intoxicants. Parchem reported

2

that he had consumed a couple of drinks at the end of his workday, but he said that it had been 12 hours since he had driven his truck. He said that someone else had transported him from his truck to his jobsite and back to his truck that day.

¶5      The police also observed that there were tire tracks in the snow around Parchem's truck and wetness on the tires. Both observations suggested that the truck had been driven fairly recently.

¶6      One officer touched the hood and tailpipe of Parchem's truck and noted that they were warm. When Parchem overheard the police discussing his warm tailpipe, he told them that he had started the truck about fifteen to twenty minutes earlier.

¶7      At some point after the officer touched the hood and tailpipe of Parchem's truck, another officer obtained Parchem's consent to open the hood of the truck. Upon lifting the hood, the officer noted that the engine was still warm from recent operation. The police also conducted a search of the interior of Parchem's truck in an attempt to locate his keys.

¶8      An officer transported Parchem to a police station garage for field sobriety tests. There, the officer observed that Parchem exhibited "clues" of intoxication on the tests. The officer placed Parchem under arrest. Parchem then submitted to a blood test, which showed that his blood alcohol content was 0.148.

¶9      The State charged Parchem with operating a motor vehicle while under the influence of an intoxicant and operating a motor vehicle with a prohibited alcohol concentration, each as a fourth offense.

¶10     Parchem filed multiple suppression motions. The circuit court denied them.

¶11     At trial, Parchem moved to exclude as hearsay and not relevant evidence of the citizen complaint that caused police to make initial contact with Parchem, namely, that he had exposed himself. The circuit court denied the motion, concluding that this evidence was admissible to explain why the police made contact with Parchem.

¶12     Parchem testified in his defense. Prior to his testimony, the circuit court and parties discussed how many of Parchem's seven prior convictions were admissible for impeachment purposes. The court determined that there were four. However, the court also concluded that it would be misleading and technically incorrect for Parchem to testify that he had only four. As a result of the court's ruling, Parchem ended up testifying that he had been convicted "[n]o less than" four times.

¶13     We reference additional facts as needed below.

### Standard of Review

¶14     Each of Parchem's arguments in this appeal relates to the circuit court's suppression motion rulings or the court's evidentiary rulings. When reviewing a suppression motion ruling, we will uphold the court's factual findings unless the findings are clearly erroneous. *State v. Blackman*, 2017 WI 77, ¶25, 377 Wis. 2d 339, 898 N.W.2d 774. However, we review de novo the application of constitutional principles to the facts. *Id.* We review evidentiary rulings for an erroneous exercise of discretion. *See State v. Hershberger*, 2014 WI App 86, ¶20, 356 Wis. 2d 220, 853 N.W.2d 586.

*Discussion*

*1. Police Contact with the Exterior of Parchem's Truck*

¶15    Parchem argues that the officer who intentionally touched the hood and tailpipe of his truck to determine whether they were warm conducted an unconstitutional search.  We do not address the constitutionality of this alleged search because we agree with the State that the police discovered substantially the same incriminating information through an independent source, namely, Parchem's later consent to allow an officer to open the hood of the truck to obtain substantially the same information regarding possible recent operation of the truck.

¶16    "The [independent source] doctrine is an exception to the exclusionary rule." *State v. Van Linn*, 2022 WI 16, ¶12, 401 Wis. 2d 1, 971 N.W.2d 478.  "[I]t allows for the admissibility of evidence or information tainted by an illegal evidence-gathering activity when the State otherwise acquires the same information—or 'rediscover[s]' it—by lawful means 'in a fashion untainted' by that illegal activity." *Id.* (quoted source omitted).

¶17    Here, Parchem's consent to allow an officer to pop the hood of his truck was an independent source of substantially the same information that a different officer gleaned earlier from touching the hood and tailpipe.  In each instance, the relevant information was that part of Parchem's truck was warmer than it would have been if, as Parchem initially told police, he had not driven his truck during the previous 12 hours.

¶18    Parchem contends that the State cannot meet its burden to show that the consent search was an independent source because the officer who sought and obtained his consent did not testify regarding whether the other officer's touching

of the truck hood and tailpipe influenced the second officer's decision to request consent. However, Parchem does not persuade us that such testimony was necessary under the independent source doctrine.[1]

### 2. *Search of the Interior of Parchem's Truck*

¶19 Parchem argues that the police unconstitutionally searched the interior of his truck. However, Parchem does not reply to the State's argument that the interior search revealed no evidence to suppress, and therefore this issue is moot. We take this lack of a reply as a concession and address the constitutionality of the interior search no further. *See* **United Coop. v. Frontier FS Coop.**, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (taking an appellant's failure to reply to respondent's argument as a concession).

### 3. *Extension of the Initial Stop*

¶20 Parchem argues that the police unlawfully extended his initial stop for indecent exposure to investigate whether he was driving while intoxicated without reasonable suspicion. The State argues that the police had not only reasonable

---

[1] We are likewise not persuaded by other arguments that Parchem makes relating to the independent source doctrine. We now comment briefly on two of those arguments.

First, Parchem argues that the State forfeited its independent source argument by failing to raise this argument in the circuit court. However, the forfeiture rule "generally applies only to appellants, and we will usually permit a respondent to employ any theory or argument on appeal that will allow us to affirm the trial court's order, even if not raised previously." *Finch v. Southside Lincoln-Mercury, Inc.*, 2004 WI App 110, ¶42, 274 Wis. 2d 719, 685 N.W.2d 154; *State v. Abbott*, 2020 WI App 25, ¶24 n.6, 392 Wis. 2d 232, 944 N.W.2d 8.

Second, in a related argument, Parchem contends that the untimeliness of the State's independent source argument denied him the opportunity for the circuit court to find relevant facts on this issue. However, the State raised a similar argument in the circuit court. Specifically, the State relied on Parchem's consent to allow police to open the hood of his truck to argue that evidence relating to the truck's temperature (and therefore its recent operation) would have been inevitably discovered. Accordingly, Parchem was on notice of the State's reliance on the consent search.

suspicion but probable cause. We conclude that the police had at least reasonable suspicion.

¶21     The question of what constitutes reasonable suspicion is a common sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of the officer's training and experience? *State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394. It requires the police to have more than a "mere hunch," but they need not rule out the possibility of innocent behavior. *State v. Genous*, 2021 WI 50, ¶8, 397 Wis. 2d 293, 961 N.W.2d 41.

¶22     Here, the parties disagree about the relevant circumstances, perhaps because they also disagree about when the police extended Parchem's initial stop to investigate whether he was driving while intoxicated. However, as best we can tell from his briefing, Parchem does not dispute that at least the following circumstances were present by the time the police completed their investigation into the indecent exposure complaint and extended the stop to investigate whether he had driven while intoxicated.

¶23     First, the police responded to a citizen complaint that a man had exposed himself in a particular parking lot. Second, the police found Parchem in that parking lot, sitting in the driver's seat of a truck that he did not dispute was his. Third, an officer immediately noticed that Parchem's eyes were glassy and that he smelled of intoxicants. The officer testified that these were signs of impairment. Fourth, there were tire tracks in the snow by Parchem's truck and wetness on the truck tires suggesting that the truck had been driven fairly recently. Fifth, the police found what appeared to be a wet area of urine next to Parchem's truck, which in combination with the citizen complaint strongly suggested that Parchem had just

7

urinated next to his truck. An officer testified that he associated public urination conduct of this type with impairment. We conclude that these circumstances, when considered together, provided reasonable suspicion that Parchem had driven while intoxicated.

### 4. Field Sobriety Tests

¶24 Parchem argues that the police unlawfully compelled him to submit to field sobriety tests. However, it is well established that the police may administer the tests when they have reasonable suspicion of an intoxicated driving offense, which they had here. *See **State v. Adell***, 2021 WI App 72, ¶33, 399 Wis. 2d 399, 966 N.W.2d 115.

¶25 According to Parchem, the field sobriety tests were nonetheless unlawfully compelled because he was subject to a custodial arrest when the police transported him in a squad vehicle to administer the tests at the police station garage. He argues that a reasonable person in his position, under these circumstances, would have believed that the person was in custody at that time.

¶26 "In Wisconsin, the test for whether a person has been arrested is whether a reasonable person in the defendant's position would have considered himself or herself to be in custody, given the degree of restraint under the circumstances." ***State v. Blatterman***, 2015 WI 46, ¶30, 362 Wis. 2d 138, 864 N.W.2d 26 (quoted source and internal quotation marks omitted). "'The circumstances of the situation including what has been communicated by the police officers, either by their words or actions, shall be controlling under [this] objective test.'" ***Id.*** (quoted source omitted).

¶27    We are not persuaded by Parchem's custodial arrest argument for two main reasons. First, the transportation of Parchem to the police station for field sobriety tests did not alone convert the stop to an arrest. "The police may, where reasonable grounds exist, 'move a suspect in the general vicinity of the stop without converting what would otherwise be a temporary seizure into an arrest.'" *Id.*, ¶24. (quoted source omitted). Here, the record shows that there were reasonable grounds for the police to move Parchem to the police station garage. The officer who transported Parchem testified that the station was less than a mile away and that he transported Parchem there for the tests due to the cold weather and because snow and ice on the ground made the pavement slippery. Another officer testified that when such conditions are present, they would tend to move the suspect to a different location to avoid any of those conditions impeding the tests.

¶28    Second, Parchem does not persuade us that, on balance, the circumstances surrounding the transportation show a sufficient degree of restraint to amount to an arrest under our case law. Parchem argues that multiple circumstances were indicative of an arrest, including the number of officers (three) initially on the scene, the police search of his truck without his consent, and statements police made that communicated to him their subjective belief that he was driving while impaired. However, Parchem discounts other significant factors weighing against a conclusion that he was under arrest, including that the police did not tell him that he was under arrest, that they allowed him to retrieve his coat from his truck before transporting him to the police station, that they did not handcuff or physically restrain him in any manner, and that they did not use any force, display any weapon, or make any threat to get him into the squad vehicle.

9

### 5. *Voluntariness of Parchem's Consent to the Blood Test*

¶29    Parchem argues that his consent to the blood test was not voluntary. The voluntariness of consent is determined based on the totality of the circumstances. *State v. Artic*, 2010 WI 83, ¶32, 327 Wis. 2d 392, 786 N.W.2d 430. Relevant factors include:

> (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.

*Id.*, ¶33.

¶30    Here, the bulk of these factors support a conclusion that Parchem's consent to the blood test was voluntary. Parchem points to no evidence that the police engaged in any intentional deception or trickery or that they engaged in any threats or intimidation, nor does Parchem argue that he has any particular characteristics that made him susceptible to providing his consent unwillingly or without understanding. He also had prior experience with intoxicated driving charges. Parchem argues that his consent to the blood test was nonetheless not voluntary because, just prior to reading the Informing the Accused form, an officer told him that "we've got to go up to the hospital" and "we have to do a blood draw." Parchem argues that the officer's statements misleadingly communicated that his consent was required, and he further argues that consent can never be voluntary when an officer communicates that consent is required.

¶31 We are not persuaded by Parchem's argument that his consent was involuntary because of the officer's statements. We instead agree with the State that the officer's statements, in context, are more reasonably interpreted as the officer's colloquial way of explaining the steps that would occur if Parchem submitted to a blood test.[2] It is undisputed that immediately following these statements, the officer read to Parchem verbatim the Informing the Accused form, which makes clear that the accused may refuse the test, albeit with potential consequences.

### 6. *Implied Consent Law*

¶32 Parchem argues that the officer's statements, "we've got to go up to the hospital" and "we have to do a blood draw," violated the implied consent law because they (1) represented an "oversupply" of information, (2) were inaccurate and misleading, and (3) affected his ability to make a choice regarding his right to refuse the blood draw. In making this argument, he relies on a three-part test from *County of Ozaukee v. Quelle*, 198 Wis. 2d 269, 280, 542 N.W.2d 196 (Ct. App. 1995), *abrogated on other grounds by* *Washburn County v. Smith*, 2008 WI 23, ¶64, 308 Wis. 2d 65, 746 N.W.2d 243.

¶33 Under the *Quelle* test, the defendant must make an initial showing that the officer's allegedly misleading statements affected the defendant's ability to choose whether to consent to the blood test. *Id.* at 278. Here, Parchem has not made that showing. Accordingly, we reject his *Quelle*-based argument.

---

[2] Interpreting the officer's statements in this manner is consistent with the circuit court's conclusion that "there is nothing to suggest that Mr. Parchem's agreement to the blood draw was anything but consensual." However, we do not conclude that statements of this type by a police officer could never reasonably be understood as a command or directive that could weigh against a determination of voluntariness. It depends on the context.

### 7. Evidence of the Citizen Complaint of Indecent Exposure

¶34    Parchem argues that he was prejudiced by the circuit court's erroneous admission of hearsay evidence referencing the citizen complaint that a man was exposing himself in the public parking lot by the library.  We reject this argument because Parchem does not establish that this evidence was offered for the truth of the matter asserted, that is, to show that Parchem had exposed himself.  "It is well established that 'out-of-court statements may be offered to prove innumerable relevant propositions apart from the truth of any matters (explicitly [or] implicitly[]) asserted.'"  *State v. Hanson*, 2019 WI 63, ¶19, 387 Wis. 2d 233, 928 N.W.2d 607 (quoting 7 Daniel D. Blinka, *Wisconsin Practice Series:  Wisconsin Evidence* § 801.302 at 768 (4th ed. 2017)).

¶35    Parchem points to no instances in the record in which evidence of the citizen's complaint was offered to show that he had exposed himself.  Rather, he points to instances in which the evidence was offered to explain why the police responded to the scene of the public parking lot and checked the area in which they found Parchem sitting in his parked truck.  Parchem does not show that this evidence was offered or admitted as hearsay.

¶36    Alternatively, Parchem argues that, even if the evidence of the citizen complaint was not hearsay, it should have been excluded because it violated his right to confrontation.  This argument misses the mark because "the Confrontation Clause does not apply to nonhearsay statements."  *Id.*, ¶27.

¶37    Parchem points to other instances at trial in which there were references to his public urination, apparently arguing that evidence of his public urination was also hearsay.  However, these references were based on police

officers' testimony about their first-hand observations of the wet area near his truck that appeared to be urine. That testimony was not hearsay.

*8. Prior Convictions for Impeachment*

¶38 Parchem argues that he was prejudiced by the circuit court's ruling relating to the number of his prior convictions for impeachment purposes. As noted above, the court determined that only four of seven of Parchem's prior convictions were admissible for impeachment purposes. However, the court also concluded that it would be misleading and technically incorrect for Parchem to testify that he had only four. The court concluded that, if he testified and the topic were raised in a question, Parchem would have to testify that he had "no less than" four or "at least" four, or alternatively that he had seven.[3] Ultimately, as a result of the court's ruling, Parchem testified that he had been convicted "[n]o less than" four times.

¶39 Parchem argues that the circuit court's requirement that he testify in this way regarding his prior convictions was an erroneous exercise of discretion and prejudicial. To clarify, Parchem does not argue that the court could not require him to acknowledge having four convictions, but instead he argues that the court could not require the "no less than" or "at least" formulations. The State counters that the court's approach was a reasonable exercise of discretion, or alternatively that any error in the court's approach was harmless. We agree with the State's harmless error argument.

¶40 "[E]rror is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" ***State v.***

---

[3] During the discussion relating to Parchem's prior convictions, the circuit court at one point appeared to indicate that another alternative would be for Parchem to testify that he had five prior convictions.

*Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434 (quoted source omitted). Here, the evidence against Parchem was strong, and the State's most powerful evidence—including the police officers' observations of his intoxication, physical evidence that he had recently driven his truck, and his blood test results— did not depend on the jury's assessment of his credibility or the number of his prior convictions. We are satisfied that it is clear beyond a reasonable doubt that a rational jury would have found Parchem guilty even if he had testified that he had "four" prior convictions instead of "[n]o less than four."

### *Conclusion*

¶41    For all of the reasons stated above, we affirm the judgment of conviction.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.